J. FRED SMITH GRAVEL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 735.   Decided November 24, 1926.

> The petitioner corporation, both before and after March 1, 1913, acquired gravel lands in exchange for its stock. Upon the evidence, *held*, that the Commissioner did not err in his computations of value and cost used by him in the computation of invested capital and the allowance for depletion.

*George S. Atkinson, Esq.*, and *Luke B. Garvin, C. P. A.*, for the petitioner.

*B. H. Saunders, Esq.*, for the respondent.

The petitioner has appealed from the determination of deficiencies in income and profits taxes for the years 1920 and 1921, totaling $2,761.36. Four errors are alleged in the petition, as follows:

(1) The Commissioner has illegally disallowed depletion deductions for the calendar years 1920 and 1921 on the basis of a fair market value as at March 1, 1913, of gravel deposits acquired prior to March 1, 1913, allowing only depletion deductions on the basis of cost.

(2) The Commissioner has illegally disallowed depletion deductions for the calendar years 1920 and 1921 on the basis of the value definitely known on May 1, 1913, and accurately ascertainable on May 1, 1913, of gravel deposits transferred to the corporation in exchange for

stock and having a value substantially in excess of the consideration paid therefor, allowing only depletion deductions on the basis of cost.

(3) The Commissioner has, in computing profits taxes for the calendar years 1920 and 1921, illegally disallowed paid-in surplus represented by property transferred to the corporation on May 1, 1913, by stockholders, which said property as of that date had a value clearly and substantially in excess of the par value of the stock exchanged therefor, allowing only in the computation of invested capital the par value of the stock so exchanged.

(4) The Commissioner has, for the purpose of computing the profits taxes for the calendar years 1920 and 1921, illegally reduced the invested capital for each of said years by assessing illegal and excessive income tax for the calendar year 1916 and illegal and excessive income and profits taxes for the calendar years 1917, 1918, and 1919.

FINDINGS OF FACT.

The petitioner is a corporation organized under the laws of the State of Texas and engaged in the business of producing and selling gravel from its own properties situated near the City of Dallas. Prior to October 1, 1912, the date of its organization, the initial stockholders of the corporation were engaged in a similar business individually and the corporation was formed to take over from the individuals the various gravel deposits owned by them and to carry on the business. The individuals had purchased as farm lands the properties which they conveyed to the corporation and had developed them to the extent that it was known that said lands contained commercial gravel in paying quantities.

On October 1, 1912, the petitioner acquired the first of several pieces of gravel-bearing lands. This tract, known as the Trinity Mills tract, consisted of approximately 100 acres, of which 66 were gravel lands, and was transferred to the petitioner in exchange for its stock of the par value of $30,000. On March 1, 1913, this tract contained 654,402.25 cubic yards of commercial gravel. On October 10, 1912, the petitioner acquired the Stanley tract containing 50 acres. This was transferred to the corporation in exchange for its stock of the par value of $15,000. On March 1, 1913, there remained 335,754.5 cubic yards of gravel. On November 7, 1912, the petitioner purchased the Good tract containing 4.7034 acres of land, paying therefor a cash consideration of $2,116.53. On March 1, 1913, there remained in this tract 23,944 cubic yards of commercial gravel. On May 1, 1913, the petitioner, in exchange for its capital stock of the par value of $50,000, acquired from two of its stockholders gravel lands known as the Stanley and May tract, consisting of 220 acres

and containing on that date 1,071,396.54 cubic yards of commercial gravel. The residual value after the removal of all gravel was $5,235. On the same date it acquired from its stockholders in exchange for its capital stock of the par value of $21,287.84 what was known as the Gribble and Trinity Mills tracts, consisting of 298.4 acres and containing 208,385.8 cubic yards of commercial gravel. On March 5, 1913, it purchased for a cash consideration of $1,000 what was known as the Cobb tract. This tract was of the area of 6.71 acres, of which approximately two acres contained 30,815 cubic yards of commercial gravel, this amount being the total gravel contained on the tract. The non-gravel lands, being approximately 4.71 acres, had a value at the date of acquisition of $25 per acre.

On August 9, 1920, the petitioner submitted to the Commissioner a compilation entitled "Schedule for Valuation of Deposits of Nonmetals," in which, among other things, appeared the following statement:

As shown in Exhibit "A" the J. Fred Smith Gravel Company purchased in 1912 and 1913 certain tracts of gravel land, giving in exchange therefor stock of the total par value of $116,287.84. In order to establish the fair market value of this stock at par we submit below a list of stock sales made by the J. Fred Smith Gravel Company in 1912 and 1913.

| DATE SALE 1912 | TO WHOM SALE MADE | NUMBER SHARES | AMOUNT PAID |
|---|---|---|---|
| Oct. 10 | Ernest E. McAnelly, Dallas, Texas | 25 | $2,500.00 |
| | J. S. M. McKamey, Gregory, Texas | 5 | 500.00 |
| Oct. 21 | McKamey Brothers, Port Lavaca, Texas | 10 | 1,000.00 |
| 1913 | | | |
| May 26 | Ernest E. McAnelly, Dallas, Texas | 20 | 2,000.00 |
| May 20 | H. T. Farrell, Plano, Texas | 150 | 15,000.00 |
| May 20 | A. A. Fielder, Sherman, Texas | 100 | 10,000.00 |
| June 10 | J. E. & J. W. Rhea, Roswell, N. M | 250 | 25,000.00 |

(J. E. Rhea spent five days thoroughly inspecting the properties and the office records before giving us his check for $25,000.00.)

In the year 1920 the Commissioner determined that the petitioner was entitled to a depletion deduction of 4.658 cents for each cubic yard of gravel removed, and allowed upon this basis a total depletion deduction of $6,688.99. During that year there was removed and sold by the petitioner 143,602.13 cubic yards of gravel.

For the year 1921 the Commissioner computed the depletion deduction upon the basis of 4.737 cents per cubic yard of gravel, and in that year the petitioner produced and sold 82,060.46 cubic yards of gravel.

OPINION.

GREEN: In computing the petitioner's invested capital and the depletion allowances, the Commissioner used as the cost of the

gravel lands acquired in exchange for stock the par value of the stock issued therefor. As to those lands acquired prior to March 1, 1913, he held that between the date of acquisition and March 1, 1913, there was no change in value.

The petitioner contends that its gravel lands were worth at the date of their acquisition at least $1,000 per acre and that the depletion computed on that basis is, for 1920, 8.6985 cents, and for 1921, 8.7175 cents per cubic yard, and that it is entitled to a paid-in surplus equivalent to $900 per acre.

Of the six tracts of gravel lands acquired by the petitioner, three were acquired before March 1, 1913, and three acquired after that date. One tract out of each group was acquired for cash and the others were acquired in exchange for stock. The tracts acquired for cash are relatively unimportant and the crucial question in the case is the value of the stock exchanged for the four tracts.

The record discloses a series of sales of this stock commencing on October 10, 1912, and continuing to June 10, 1913. There were, in all, seven different sales. They range in size from 5 to 250 shares. In each instance they were sold for cash at par. There is nothing in the evidence which reduces the probative effect of these sales. We are of the opinion that the stock of the petitioner at the various times of its exchange for property had a value of $100 per share.

Our conclusion as to the value of the stock exchanged fixes the cash value of the properties acquired. This disposes of the question as to invested capital, since the statute requires that properties acquired for stock shall be included at their cash value.

The other questions relate to the correctness of the depletion allowance used by the Commissioner. We have found that the stock of the petitioner at the time of its exchange was worth par, and from this it follows that the cost of the two tracts acquired in exchange for stock subsequent to March 1, 1913, was the par value of the stock exchanged therefor.

The Stanley and May tract, acquired May 1, 1913, for stock of the par value of $50,000, contained 1,071,396.54 cubic yards of gravel. Using the value of the stock as the measure and deducting the residual value, we have $44,765 as the cost of the gravel, or a cost per yard of 4.178 cents, which is somewhat less than the 4.658 cents used by the Commissioner in his computation for the year 1920. We are not advised as to the elements of depletion other than cost claimed by the petitioner or used by the Commissioner.

On the same date, i. e., May 1, 1913, the petitioner acquired the Gribble and Trinity Mills tracts, containing 208,385.8 cubic yards of gravel, in exchange for its stock of a par value of $21,287.84. This gives a cost per cubic yard 10.215 cents. However, it is noted that this tract was acquired from the same individuals as was the

Stanley and May tract and on the same date, and that, while this tract was larger by 76.40 acres, its gravel content was 863,010.74 cubic yards less. We are unable to account for this difference in cost.

The Cobb tract, consisting of 6.71 acres, containing 30,815 cubic yards of gravel, was purchased on March 5, 1913, for $1,000 in cash. Of this approximately two acres contained gravel. The non-gravel lands were worth $25 per acre. The 30,815 cubic yards therefore cost $882.50 or 2.86 cents per cubic yard.

The Good tract, consisting of 4.7034 acres, was acquired on November 7, 1912, for a cash consideration of $2,116.53. On March 1, 1913, this tract contained 23,944 yards of gravel, but the evidence does not disclose its gravel content at the date of acquisition and it is impossible for us to compute the cost per yard of the gravel in this tract.

We are not advised of the amount which the Commissioner used as the cost of the three tracts acquired after March 1, 1913, nor are we advised as to the amount which the Commissioner used as the March 1, 1913, value of the three tracts acquired prior to March 1, 1913. All we have is the depletion allowance per cubic yard. This the Commissioner computed to be 4.658 cents for all of the gravel. The average cost per yard of the gravel acquired subsequent to March 1, 1913, is slightly over 5 cents per yard, and this we assume is the cost used by the Commissioner, inasmuch as we have used his valuation of stock. This average cost is slightly in excess of the depletion allowance. If we use this average cost as the value per cubic yard of the gravel in place in the three tracts acquired prior to March 1, 1913, the excess remains the same. The Commissioner's depletion allowance for 1920 is approximately one-half cent per yard less than the March 1, 1913, value or cost as computed by us. It is obvious that our computation of the March 1, 1913, value is inaccurate. We have used stock sales as the measure of the value of stock exchanged for gravel lands and thus computed the cost of two of the tracts. For one tract this cost is 4.178 cents and for the other 10.215 cents per cubic yard. We averaged these costs with the cash purchase at 2.86 cents per yard, and the average thus obtained was used as the March 1, 1913, value of the gravel in the three tracts first acquired. All of this we have done to test the correctness of the Commissioner's depletion rate applied to the gravel acquired both before and after March 1, 1913. Our computation of value does not take into consideration many factors, as, for example, accessibility, depth of strata, over-burden, or subsequent expenditures, because this data was not furnished us.

Since our computation gives a depletion allowance only one-half cent (approximately) greater than that used by the Commissioner

for 1920 (less in the case of 1921), and since our computation is based upon costs and values that are at best only inaccurate estimates, we can not say that the Commissioner erred.

Each of the errors alleged relates to value or cost used in the computation of invested capital and of the depletion allowance. We find no error in either as determined by the Commissioner.

> *Judgment will be entered for the Commissioner.*